**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| In re: LUMEN TECHNOLOGIES, INC. SECURITIES LITIGATION II | Case No. 3:23-cv-01290-TAD-KDM<br><br>Judge: Terry A. Doughty<br><br>Magistrate Judge: Kayla D. McClusky |

<u>**MEMORANDUM IN SUPPORT OF MOTION TO TAKE JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**</u>

Defendants respectfully move the Court to take judicial notice, pursuant to Federal Rule of Evidence 201, of two categories of materials, all of which are either matters of public record, referenced in Plaintiffs' Amended Class Action Complaint (the "Complaint" or "CAC"), or both. The documents in "Category I" comprise: (1) archived web pages, (2) articles, (3) SEC filings, (4) earnings call transcripts, (5) industry conference transcripts, and (6) an EPA safety pamphlet. The documents in "Category II" comprise: (1) industry publications, (2) scientific studies, (3) a subpoena letter from another judicial proceeding, (4) analyst and news reports, (5) an article published by the Communications Workers of America ("CWA"), and (6) SEC filings. Appendices I and II, respectively, identify the Category I and II materials.

**I.      PROCEDURAL HISTORY**

On September 15, 2023, Plaintiff filed an initial complaint in this case. ECF No. 1. On February 26, 2024, Plaintiffs filed the Complaint. ECF No. 35. Plaintiffs allege that Defendants fraudulently concealed information about Lumen's potential financial exposure related to lead-sheathed telecommunications cables. The Complaint quotes and references, among other things, selected earnings release calls, SEC filings, industry conference transcripts, and analyst reports.

1

The Complaint also cites a plethora of studies, safety materials, industry publications, news publications, and other publicly available materials concerning lead and lead-sheathed cables.

Defendants' Motion to Dismiss, filed concurrently with this Motion, references many of the same materials cited in the Complaint, as well as additional publicly available independent studies, industry publications and news reports, government-issued pamphlets, SEC filings, and a publicly filed subpoena letter not cited in the Complaint.

## II.    LAW & ARGUMENT

### A.    Applicable Legal Standard

In deciding a motion to dismiss, courts ordinarily consider: "(1) the pleadings and any attachment to the pleadings; (2) documents incorporated into the complaint by reference; and (3) documents that a defendant attaches to its motion to dismiss [that] are referred to in the plaintiff's complaint and are central to the plaintiff's claim."  *Gilchrist Constr. Co., LLC v. Travelers Indem. Co.*, 358 F. Supp. 3d 583, 587 (W.D. La. 2019) (citing *Little v. USAA Cas. Ins. Co.*, 2010 WL 4909869, at *2 (5th Cir. 2010)).

Furthermore, "it is clearly proper" at the motion to dismiss stage, especially in securities fraud cases alleging material misstatements or omissions, to take judicial notice of publicly available documents and information. *See Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (instructing courts ruling on a motion to dismiss claims under Section 10(b) to "consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").  This is particularly true where, as here, the documents for which Defendants seek judicial notice are submitted not to prove the truth of their contents but rather to show the wealth of publicly available information about the issues raised in the Complaint.  *See Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996) (holding that judicial

2

notice of publicly available documents is proper "for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents").

Indeed, courts routinely take judicial notice of the types of records that Defendants submit here in a wide variety of cases.  *See, e.g.*, *Lovelace*, 78 F.3d at 1017-18 (taking judicial notice of documents filed with the SEC); *Funk v. Stryker Corp.,* 631 F.3d 777, 783 (5th Cir. 2011) (taking judicial notice of FDA documents that were "matters of public record directly relevant to the issue at hand"); *Esquivel v. Fudge*, 2023 WL 5658338, at *7 (N.D. Tex. Aug. 31, 2023) ("A court has the power to take judicial notice of the coverage and existence of newspaper and magazine articles, as well as the fact that the market is aware of information contained in news articles.") (citations omitted); *United States ex rel. Lam v. Tenet Healthcare Corp.*, 481 F. Supp. 2d 673, 680 (W.D. Tex. 2006) (taking judicial notice of the coverage and existence of newspaper articles, including an article published by UBS Warburg's Global Equity Research); *Stanfield v. Bos. Sci. Corp.*, 166 F. Supp. 3d 873, 879 (S.D. Tex. 2015) (taking judicial notice of FDA approval as a matter of public record); *Alaska Elec. Pension Fund v. Asar*, 768 F. App'x 175, 182-83 (5th Cir. 2019) (taking judicial notice of Form 4s to establish that stock trades were made to satisfy tax obligations); *Residents of Gordon Plaza, Inc. v. Cantrell*, 2020 WL 6503618, *3 (E.D. La. Nov. 5, 2020) (taking judicial notice of an EPA report); *In re Katrina Canal Breaches Consol. Lit.*, 533 F.Supp.2d 615, n.2 (E.D. La. 2008) (taking judicial notice of a study commissioned by the Army Corps of Engineers); *Town of Davie Police Pension Plan v. Pier 1 Imports, Inc.*, 325 F. Supp. 3d 728, 746 n.3 (N.D. Tex. 2018) (taking judicial notice of "advertisements from Pier 1's website showing specific markdowns in mid-2015"), *aff'd* 935 F.3d 424 (5th Cir. 2019); *Dresner v. Silverback Therapeutics, Inc.*, 2022 WL 16716165, at *5 (W.D. Wash. Nov. 4, 2022) (Courts have regularly

taken judicial notice of analyst reports, not for the truth of the matter asserted, but 'for the purpose of showing that particular information was available to the stock market.'").

The materials presented here are appropriate for judicial notice because they are relevant to this litigation and derive from accurate sources, as contemplated by Rule 201. *See Lovelace*, 78 F.3d at 1017-18 (5th Cir. 1996) (discussing Fed. R. Evid. 201(f), which allows judicial notice to be taken "at any stage of the proceeding"). Rule 201 permits a court to take judicial notice of a fact as long as it is "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). A "fact" subject to judicial notice at the motion to dismiss stage may include information regarding the existence and scope of a document. *See, e.g.*, *Central Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 554 (5th Cir. 2007) (holding the district court "properly considered" the "existence" of a divorce decree for purposes of evaluating a defendant's reasons for selling his stock); *Schott v. Nobilis Health Corp.*, 211 F. Supp. 3d 936, n.2 (S.D. Tex. 2016) ("[T]he court takes judicial notice of Nobilis's public filing to the SEC to note the reported adjustment to the 2015 second-quarter Form 10-Q.").

Rule 201(c)(2) further states that the Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2); *see also McGuire v. Abbot Labs, Inc.*, 2022 WL 4295402, *3 (E.D. Tex. Sep. 15, 2022) ("[J]udicial notice is appropriate here because Abbott requested the court to do so and supplied the court with the FDA letters." (citing Fed. R. Evid. 201(c)(2)).

B.    **The Category I Documents Can Be Considered Without Judicial Notice and Are Independently Appropriate for Judicial Notice**

The Court may consider the Category I documents without making a judicial notice finding because they are incorporated by reference in the Complaint, central to Plaintiffs' claims, and attached as exhibits to Defendants' Motion to Dismiss.  *See supra* Part II.A.  These documents are:

- An archived webpage for the 2010 Environmental, Health & Safety Communications Panel ("EHSCP") International Communications Symposium ("ICS") conference materials (*see, e.g.,* CAC ¶¶ 133-35), and an archived version of the presentation "Managing Lead Exposure During Cable Removal Operations" by John Malone from the 2013 ICS (*see, e.g., id.* ¶ 136);

- An announcement by the CWA (*see, e.g., id.* ¶ 151);

- Lumen's 2017 and 2022 Form 10-K filings (*see, e.g., id.* ¶¶ 253, 282, 302-03, 331);

- A series of newspaper articles, including a July 9, 2023 WSJ article titled "*America Is Wrapped in Miles of Toxic Lead Cables*" (*see, e.g., id.* ¶¶ 9, 218, 222, 352); a July 11, 2023 WSJ article titled "*Lawmakers Demand Telecom Firms Act on Toxic Lead Cables After WSJ Investigation*" (*see, e.g., id.* ¶¶ 224, 354); a July 12, 2023 WSJ article titled "*What AT&T And Verizon Knew About Toxic Lead Cables*" (*see, e.g., id.* ¶ 220, 225, 355); a July 14, 2023 WSJ article titled "*AT&T, Other Telecom Stocks Sink After WSJ Investigation on Toxic Lead Cables*" (*see, e.g., id.* ¶¶ 356-57); a July 17, 2023 WSJ article titled "*Environmental Groups Ask EPA to Shield Public From Abandoned Lead Cables*" (*see, e.g., id.* ¶ 359); a July 18, 2023 Fierce Telecom article titled "*TDS Details Lead Cable Findings, Verizon, AT&T Still Cagey*" (*see, e.g., id.* ¶ 361); and a July 26, 2023 WSJ article titled "*Justice Department and EPA Probe Telecom Companies Over Lead Cables*" (*see, e.g., id.* ¶ 363);

- Lumen's Q1, Q2, and Q3 2023 10-Q filings (*see, e.g., id.* ¶¶ 12, 235, 238, 345, 349, 366, 368);

- A lead paint pamphlet approved by the EPA titled "*Protect Your Family from Lead in Your Home*" (*see, e.g., id.* ¶¶ 68-69);

- A May 19, 2021 Shareholder and Analyst Call transcript (*see, e.g., id.* ¶ 276); and

- The transcript of Lumen's Q2 2023 Earnings Call (*see, e.g., id.* ¶¶ 12, 111, 234, 365).

Defendants respectfully submit that Plaintiffs rely on all of the Category I materials in the Complaint, and thus they can be considered without resort to judicial notice.  The Category I

materials are in all events properly subject to judicial notice for the same reasons set forth below (*see infra* Part II.C) and in light of the authorities discussed above (*see supra* Part II.A).

> **C.      Courts Routinely Take Judicial Notice of Materials Like Those in Category II**

The Court should take judicial notice of the Category II documents because they are from unquestionably accurate sources and are relevant to the case in demonstrating the extent and existence of information relating to the subject matter underlying Plaintiffs' claims.  *See supra* Part II.A.  Like the Category I documents, the Category II documents are publicly available and, while not explicitly referenced in the Complaint, are similar to those relied on by Plaintiffs:

- A 1979 pamphlet published by the Bell System titled "Occupational Exposure to Lead Cable Removal";

- Published scientific studies regarding the potential effects of lead on human health and the environment, including lead-sheathed telecommunications cables;

- A publicly available letter dated July 27, 2023 from counsel to Pacific Bell Telephone Company to in-house counsel for the Wall Street Journal in connection with the lawsuit captioned *California Sportfishing Protection Alliance v. Pacific Bell Telephone Co.*, 2:21-cv-00073 (E.D. Cal. Jan. 14, 2021);

- Analyst and news reports published during the class period;

- Form 4 SEC filings showing the Individual Defendants' equity in the Company;

- Lumen's 2023 Form 10-K filed with the SEC;

- A February 9, 2014 CWA article; and

- A press release included as exhibit 99.1 to Lumen's August 1, 2023 Form 8-K filed with the SEC announcing quarterly financial results.

Each of these documents (listed in Appendix II) warrants judicial notice because they all are from sources whose accuracy cannot reasonably be questioned and are plainly relevant based merely on their existence and scope for the reasons set forth below:

- Exhibit 18 was published by the Bell System (formerly a leader in the telecommunications industry (*see, e.g.,* CAC ¶ 99)) and shows that documents warning about potential lead exposure through lead-sheathed cables and providing telecommunications workers guidance on how to safely work with them were publicly available as far back as 1979. The Complaint repeatedly refers to similar background information relating to the potential risks associated with exposure to lead.  *See, e.g.*, CAC ¶¶ 55-93.  Furthermore, Defendants seek judicial notice of Exhibit 18 for the limited purpose of establishing that information about the potential risks of exposure to lead-sheathed cables for telecommunications workers existed in the market.  *See supra* Part II.A.

- Exhibits 16, 17, 19 through 21 show that studies concerning the potential effects of lead on health and the environment were published as far back as the 1970s.  Moreover, studies regarding the potential for lead-sheathed cables to leach lead into the environment and the extent of the possible risks this posed to health and the environment were published consistently from the 1970s into the 2000s.  These studies were published by reputable sources such as leading hospitals, academic journals, and telecommunications industry specialists.  The Complaint repeatedly refers to similar studies (*see, e.g.*, CAC ¶¶ 65, 74, 168) and background information relating to the potential risks associated with exposure to lead (*see, e.g.*, *id.* ¶¶ 55-93).  Furthermore, Defendants seek judicial notice of Exhibit 16, 17, 19 through 21 for the limited purpose of establishing that information about the potential effects of lead on health and the environment existed in the market.  *See supra* Part II.A.

- Exhibit 36 is a subpoena letter requesting "all sampling, testing, data, analysis, research, reports, and communications relating to lead-clad telecommunications cables and the articles published by the [Wall Street] Journal on the subject during the week of July 9, 2023."  The referenced WSJ articles are directly cited in and central to the Complaint (*see, e.g.*, CAC ¶¶ 197-201), and the cited letter shows that other parties questioned the veracity of the WSJ's claims.  Furthermore, Defendants seek judicial notice of Exhibit 36 for the limited purpose of establishing that information about litigation relating to the potential effects of lead on health and the environment, and the ongoing debate regarding that topic, existed in the market.  *See supra* Part II.A.

- Exhibits 32 through 35 are reports and news articles from leading industry and media outlets showing that analysts attributed Lumen's stock price declines near the end of the alleged class period to financial performance issues having nothing to do with lead-sheathed cables or recent media coverage.  The Complaint repeatedly refers to news articles and analyst reports similar to Exhibits 32 through 35, including articles and reports similarly relating to Lumen's stock price movements during the same part of the alleged class period (*see, e.g.*, CAC ¶¶ 10, 356, 360), and the allegations in the Complaint are premised upon, *inter alia*, Plaintiffs' counsel's "review and analysis of news reports . . . and other publicly available information issued by or about Lumen or the industry in which it operates" (*see id.* at 1).  Furthermore, Defendants seek judicial notice of Exhibit 32 through 35 for the limited purpose of establishing that information about the Company's financial performance existed in the market.  *See supra* Part II.A.

- Exhibits 10 through 13 are SEC filings showing that no Individual Defendant made an open market sale of Lumen securities, and all of the Individual Defendants actually increased their equity in the Company during the Class Period.  The Complaint relies upon allegations regarding Defendants' supposed "powerful economic incentive" to conceal information about Lumen's lead-sheathed cables (*see, e.g.*, CAC ¶¶ 382-87), and the allegations in the Complaint are premised upon, *inter alia*, Plaintiffs' counsel's "review and analysis of regulatory filings made with the U.S. Securities and Exchange Commission . . . and other publicly available information issued by or about Lumen or the industry in which it operates" (*see id.* at 1).  Furthermore, Defendants seek judicial notice of Exhibits 10 through 13 for the limited purpose of establishing the existence and scope of the Individual Defendants' personal stock transactions.  *See supra* Part II.A.

- Exhibit 2 is a Form 10-K filed with the SEC showing that Lumen's most recent SEC disclosure confirms that the Company had not accrued any potential costs related to lead-sheathed cables and will only accrue when such costs are probable and reasonably estimable, in accordance with GAAP.  The Complaint repeatedly refers to Lumen's Form 10-K Annual Reports (*see, e.g.*, CAC ¶¶ 246, 253-54, 256, 258, 268-69, 282, 293-94, 302, 303, 331, 347, 349, 366, 406, 410-11), including to allege specific misstatements, and the allegations in the Complaint are premised upon, *inter alia*, Plaintiffs' counsel's "review and analysis of regulatory filings made with the U.S. Securities and Exchange Commission" (*see id.* at 1).  Furthermore, Defendants seek judicial notice of Exhibit 2 for the limited purpose of establishing the existence and scope of Lumen's public disclosures. *See supra* Part II.A.

- Exhibit 23 is an article published by the CWA union showing that Lumen's settlement agreement with MNOSHA was publicly covered in an article on February 9, 2014.  The Complaint relies on allegations relating to similar articles (*see, e.g.*, CAC ¶ 151), and the allegations in the Complaint are premised upon, *inter alia*, Plaintiffs' counsel's "review and analysis of publicly available information issued by or about Lumen or the industry in which it operates" (*see id.* at 1).  Furthermore, Defendants seek judicial notice of Exhibit 23 for the limited purpose of establishing that information about the MNOSHA settlement existed in the market.  *See supra* Part II.A.

- Exhibit 9 is an exhibit to a Form 8-K filed with the SEC showing Lumens' disclosure of its financial performance during part of the alleged class period.  The Complaint repeatedly refers to public disclosures similar to Exhibit 9, including public disclosures made by Lumen the same day (*see, e.g.*, CAC ¶¶ 12, 111, 234-35, 345, 365-66), and the allegations in the Complaint are premised upon, *inter alia*, Plaintiffs' counsel's "review and analysis of regulatory filings made with the U.S. Securities and Exchange Commission, . . . press releases, . . . and other publicly available information issued by or about Lumen or the industry in which it operates" (*see id.* at 1).  Furthermore, Defendants seek judicial notice of Exhibit 9 for the limited purpose of establishing that information about the Company's financial performance existed in the market.  *See supra* Part II.A.

- Exhibit 24 is a blog post written by a commissioner to the District of Columbia's Statewide Health Coordinating Council addressing flaws in the scientific research methodologies

used to obtain data underlying the July 2023 WSJ article series.  The Complaint repeatedly refers to the WSJ articles (*see, e.g.,* CAC ¶¶ 3, 9, 202, 204-221, 351-359, 363), and the allegations in the Complaint are premised upon, *inter alia*, Plaintiffs' counsel's "review and analysis of news reports . . . and other publicly available information issued by or about Lumen or the industry in which it operates" (*see id.* at 1).  Furthermore, Defendants seek judicial notice of Exhibit 24 for the limited purpose of establishing that there exists a debate in the public domain about the issues addressed in the WSJ articles, including debate about the extent of any potential risk to health or the environment.  *See supra* Part II.A.

## III.    CONCLUSION

For these reasons, Defendants move the Court to grant this Motion and take judicial notice of the materials identified in Appendices I and II in deciding Defendants' Motion to Dismiss.

Respectfully submitted,

/s/ *Claire Elizabeth Juneau*

Claire Elizabeth Juneau (#33209)
**KEAN MILLER LLP**
First Bank and Trust Tower
909 Poydras Street, Suite 3600
New Orleans, LA 70112
(504) 585-3050
claire.juneau@keanmiller.com

Mallory Tosch Brennan (*pro hac vice*)
**SHEARMAN & STERLING LLP**
800 Capitol Street, Suite 2200
Houston, TX 77002
(713) 354-4900
mallory.brennan@shearman.com

Lyle Roberts (*pro hac vice*)
**SHEARMAN & STERLING LLP**
401 9th Street NW
Washington, DC 20004
(202) 508-8108
lyle.roberts@shearman.com

*Counsel for Defendants Lumen Technologies, Inc., Kate Johnson, Chris Stansbury, Jeffrey K. Storey, and Indraneel Dev*

Dated: April 26, 2024

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 26, 2024, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

/s/ *Claire Elizabeth Juneau*
Claire Elizabeth Juneau