**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

|  |  |
|---|---|
| **IN RE: LUMEN TECHNOLOGIES, INC. SECURITIES LITIGATION II** | **CIV. ACTION NO. 3:23-1290**<br><br>**JUDGE: TERRY A. DOUGHTY**<br>**MAG. JUDGE: KAYLA D. MCCLUSKY** |

**REPLY MEMORANDUM**
**IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO STRIKE**

*May It Please the Court*:

Plaintiffs respectfully submit this reply memorandum in further support of their Motion to Strike, filed June 25, 2024 [Doc. No. 46] (the "Motion to Strike") and in response to Defendants' Opposition to the Motion to Strike filed on July 17, 2024 [Doc. No. 53] (the "Opposition"). For the reasons set forth herein, and in Plaintiffs' opening Memorandum in Support of the Motion to Strike [Doc. No. 46-1] (the "Memorandum"), the Court should grant the Motion to Strike in its entirety. Unless otherwise noted, all capitalized terms have the same meaning ascribed to them in Plaintiffs' Memorandum. The Memorandum previously referred to the brief filed in support of Defendants' Motion to Dismiss [Doc. No. 40] as the "Memorandum" or "Mem." To avoid confusion, the brief filed in support of Defendants' Motion to Dismiss is redefined herein as the "MTD Mem."

**PRELIMINARY STATEMENT**

In their opening Memorandum, Plaintiffs demonstrated that many of the supporting materials Defendants submitted in connection with their Motion to Dismiss should be stricken because they are either improper or noncompliant. In particular, (1) Defendants did not file their Judicial Notice Motion until April 27, 2024, *after* the stipulated deadline to file all materials in support of their Motion to Dismiss; (2) the Court is prohibited from considering the vast majority of the supporting exhibits they submitted; and (3) the self-styled "Appendices" attached thereto do not merely reproduce text from the AC but present 12 additional pages of legal argument in excess of the already-expanded page limit. Defendants' Opposition confirms that this relief is warranted.

Unable to deny that they filed the Judicial Notice Motion on April 27, 2024, or that it is standard practice to strike exhibits that cannot be considered on a motion to dismiss, Defendants grasp at straws. They insist that the Judicial Notice Motion was not subject to the deadlines in the Scheduling Order (or any, for that matter) because it is a separate motion not directly mentioned therein and the Court lacks authority to strike exhibits under Rule 12(f). Putting aside that the Judicial Notice Motion was expressly made *in support of the Motion to Dismiss*, Defendants cannot have it both ways. Either it was filed in support of the Motion to Dismiss—in which case, it was subject to the deadline in the Scheduling Order—or it can be denied outright because it has no bearing on that Motion. In addition, Plaintiffs do not rely on Rule 12(f) for any relief requested.

The Opposition also confesses that Appendices group the alleged misstatements by "legal argument" but cites cases accepting such charts in an attempt to justify their use. However, the Appendices expressly contain *additional information* that could not fit in Defendants' brief and all the cases they cite upheld charts that simply summarized information already included in the brief.

For these reasons, and those discussed below, the Court should grant the Motion to Strike.

1

## ARGUMENT

I.    **THE OPPOSITION CONFIRMS THAT THE COURT SHOULD STRIKE DEFENDANTS' JUDICIAL NOTICE MOTION OR EXHIBITS CITED THEREIN**

    **A.    Defendants Fail to Defeat the Showing That the Court Should Strike the Judicial Notice Motion**

Plaintiffs showed that the Court should strike the Judicial Notice Motion because (1) the Scheduling Order stated that any response to the AC—be it a motion to dismiss or otherwise—was due on April 26, 2024; (2) Defendants filed the Judicial Notice Motion on April 27, 2024; (3) the Court may exercise its discretion to accept a late filing after the deadline has passed only upon a showing of excusable neglect *and* good cause; and (4) Defendants cannot satisfy either showing. *See* Mem. at 3-5.  Defendants do not dispute, and thereby concede, points (1), (2), and (3).  *See Retina & Vitreous of La., Inc. v. Mason*, 2024 WL 3307848, at *7 (M.D. La. Mar. 1, 2024) ("[T]he failure to respond to arguments constitutes abandonment or waiver of the issue."); *see also Jones v. Jefferson Parish*, 2013 WL 871539, at *3 (E.D. La. Mar. 8, 2013) (collecting cases).  Instead, they resist the Motion to Strike on the grounds that the Judicial Notice Motion was not subject to the deadlines in the Scheduling Order, and, even if it was, Plaintiffs have not suffered any prejudice by the delay. *See* Opp. at 5-11.  These contentions fail to overcome Plaintiffs' showing.

The argument that Scheduling Order addressed only the deadline for a motion to dismiss, not any "separate motion" (Opp. at 6), elevates form over substance.  Even Defendants admit that a request to take judicial notice need not take the form of a motion. *See* Opp. at 7.  More to the point, the Judicial Notice Motion is itself captioned as a filing made *in support of the Motion to Dismiss* and expressly asks the Court to judicially notice exhibits cited therein for purposes of "*deciding the Motion to Dismiss*." [Doc. No. 38.]  By Defendants' logic, a party can submit additional papers supporting a motion to dismiss—like the Judicial Notice Motion—any time *after* the deadline to file such a motion so long as the motion itself is filed before the deadline. Opp. at 6, 7.  But that is not

the law.  *See, e.g.*, *Charlie Brown Heritage Found. v. Columbia Brazoria Ind. Sch. Dist.*, 2018 WL 2059203, at *4 (S.D. Tex. May 3, 2018) (practice of submitting "incomplete" filings on deadline and additional materials at later dates "flaunt[s]" federal rules), *aff'd*, 771 F. App'x 536 (5th Cir. 2019).

For this reason, courts in this Circuit and elsewhere routinely find that requests to take judicial notice of facts for a motion are untimely when filed after the deadline for that motion.  *See United States v. Akamnonu*, 2016 WL 3551626, at *2 (N.D. Tex. June 30, 2016) (request for judicial notice filed after deadline for associated motion to dissolve writ of garnishment was "untimely"); *see also Malasky v. Esposito*, 2019 WL 79032, at *4 (N.D. Cal. Jan. 2, 2019) (denying request for judicial notice filed one week after deadline for motion to dismiss brief as "untimely"), *aff'd*, 781 F. App'x 643, 644 (9th Cir. 2019) (affirming denial of judicial notice request); *Bennett v. Ocwen Loan Servicing, LLC*, 2014 WL 12861145, at *2 (N.D. Ga. Feb. 25, 2014) (same after deadline to file motion to dismiss "closed"); *BAC Home Loans Servicing, LP v. Hackett*, 2013 WL 5636714, at *5 (D. Or. Oct. 11, 2013) (same because "the briefing period for the summary judgment motions has already closed").  That Defendants filed the Judicial Notice Motion at 12:19 a.m. on April 27, 2024, strongly suggests that they were aware it was subject to the April 26, 2024 deadline.[1]

Recognizing as much, Defendants fallback on the argument that Plaintiffs have not suffered any prejudice even if the Judicial Notice Motion was filed "late."  Opp. at 9.  But this averment—even assuming it to be true *arguendo*—is insufficient to condone Defendants' late filing.

The Fifth Circuit has made clear that the lack of prejudice is "alone" insufficient to establish excusable neglect.  *Halicki v. La. Casino Cruises, Inc.*, 151 F.3d 465, 469 n.4 (5th Cir. 1998).  Otherwise "[t]he word 'excusable' would be read out of the rule . . . by a mere absence of harm."

---

[1] Defendants also fault Plaintiffs for contending that the Judicial Notice Motion "respond[s]" to the AC.  Opp. at 6-7.  But they made no such argument.  Plaintiffs simply stated that the Scheduling Order, as a matter of fact, required Defendants to file any response to the AC by no later than April 26, 2024, including a motion to dismiss.  *See* Mem. at 2, 3, 4.  As explained above, the Judicial Notice Motion violated that clear directive because it is, according to its own text, a filing offered in further support of the Motion to Dismiss that Defendants filed on April 26, 2024.

*Id.*; *see also Razvi v. Dallas Ft. Worth Int'l Airport*, 2022 WL 4298141, at *3 (5th Cir. Sept. 16, 2022) ("[T]he absence of prejudice is not in itself determinative").  As such, it has held that making a filing *one day late* is inexcusable when the party is represented by "multiple lawyers" and the proffered justifications are "weak."  *Hernandez v. Univ. of Texas-Pan Am.*, 729 F. App'x 340, 341 (5th Cir. 2018).  Here, the only justification offered by Defendants—represented by sophisticated class action attorneys—appears to be grounded in their tortured "reading" of the Scheduling Order.  Opp. at 6.  In this regard, it is settled that "an attorney's simple misunderstanding . . . weighs heavily *against* a finding of excusable neglect."  *NLRB v. Tri-Cty. Elec. Cooperative, Inc.*, 2023 WL 5040960, at *2 (5th Cir. Aug. 8, 2023) (emphasis added); *see also Worthy v. Gen. Longshoremen's Workers Int'l Longshoreman's Ass'n*, 2003 WL 260520, at *2 (E.D. La. Feb. 4, 2003) (filing made "a mere one day late" based on "mistake" is inexcusable), *aff'd*, 75 F. App'x 260 (5th Cir. 2003).

Similarly, Defendants ignore that "the absence of prejudice" is "insufficient to establish 'good cause'" given the focus of that standard on the diligence of the party seeking to file after the deadline.  *Pratt Paper (LA), LLC v. JLM Advanced Tech. Servs., Inc.*, 2016 WL 5854235, at *2 (W.D. La. Oct. 6, 2016).  Indeed, Defendants' singular focus on prejudice tellingly elides their inability to articulate a single circumstance that *prevented* them from meeting the April 26, 2024 deadline.  Their failure to even attempt to do so is fatal.  *See Hernandez v. Groendyke Transp.*, 2022 WL 487915, at *2 (N.D. Tex. Feb. 17, 2022) (explaining why failing to demonstrate diligence warrants finding good cause is lacking even absent prejudice); *see also Gaudet v. Howard L. Nations, APC*, 2021 WL 2446203, at *4-6 (E.D. La. June 15, 2021) (good cause lacking for motions filed one day late based on misreading of court-ordered deadline that did not prejudice plaintiffs).

In light of this authority, courts in this Circuit have not hesitated to strike filings made by parties a short time after the applicable deadline without good cause or excusable neglect.  *See, e.g.*,

4

*Vasudevan v. Admins. of Tulane Educ. Fund*, 706 F. App'x 147, 150-51 (5th Cir. 2017) (affirming order striking opposition brief filed one day after deadline without a showing of excusable neglect); *Sandifer v. Doe*, 2024 WL 3223919, at *2-3 (E.D. La. Feb. 16, 2024) (striking answer filed four days late without good cause); *Gaudet*, 2021 WL 2446203, at *7 (same for motions filed one day after court-ordered deadline); *Holland v. Keesler Fed. Credit Union*, 2017 WL 2231449, at *3 (S.D. Miss. May 22, 2017) (same for response to *Daubert* motion filed one day late); *Bustos v. Lennon*, 2012 WL 12882898, at *2 (W.D. Tex. June 21, 2012) (same for opposition brief filed three days late); *Gill v. Jacobs Eng'g Grp., Inc.*, 2011 WL 3796751, at *1 & n.2 (M.D. La. Aug. 26, 2011) (same for opposition to motion to dismiss filed four days late).  As such, the hyperbole interspersed throughout the Opposition to assail the request to strike the Judicial Notice Motion is entirely misplaced.

In fact, the authority Defendants rely on to suggest prejudice is required is inapposite.  *See* Opp. at 9 n.3.  Unencumbered by their editorializing, the case they cite makes clear that "motions to strike *defenses*" under *Rule 12(f)* are disfavored and, as such, the act of "striking *a pleading* should be sparingly used by courts," consistent with the treatise cited therein.  *Abene v. Jaybar, LLC*, 802 F. Supp. 2d 716, 723 (E.D. La. 2011) (emphasis added).  Preventing a party asserting a defense because it is "redundant, immaterial, impertinent, or scandalous," Fed. R. Civ. P. 12(f), is qualitatively different than refusing to accept an out-of-time filing by a party who disregarded a deadline without cause, and, as such, involves different considerations.  *See Spend Life Wiseley Co. v. Phillips*, 2023 WL 7164919, at *5 (E.D. Tex. Oct. 31, 2023) (granting motion to strike summary judgment motion filed after deadline without good cause "even assuming [it] would not prejudice Plaintiffs").

This Court's decision in *Opelousas Hotel Group LLC v. DDG Construction Inc.*, 2023 WL 2732972, at *1 (W.D. La. Jan. 18, 2023) (relied on in Opp. at 10), does not require a different result. There, "the same or similar issues" were raised in other papers so "the Court would still consider the

5

arguments" even if it granted the motion to strike the untimely one. *Id.* Here, on the other hand, Defendants' out-of-time submission asks the Court to consider a host of external exhibits beyond the four corners of the AC on a motion meant to test the sufficiency of the pleadings.

B.     **Defendants Offer No Meaningful Reason to Depart from the Settled Practice of Striking Exhibits That Cannot Be Considered on a Motion to Dismiss**

Plaintiffs also demonstrated that, if the Court were to consider the untimely Judicial Notice Motion, it should strike the many exhibits submitted by Defendants that are not properly before the Court on their Motion to Dismiss as well as all arguments based on them. *See* Mem. at 5-6. In response, Defendants ask the Court to ignore this commonsense and well-supported conclusion because (1) "some courts"—not this one or any others in this Circuit—have held that Rule 12(f) does not provide the authority to do so; and (2) this request somehow "circumvents" the parties' separate briefing on their Judicial Notice Motion. *See* Opp. at 12. Neither argument holds any water.

Defendants' Rule 12(f) argument is a red herring. Rule 12(f) permits courts to strike certain matters from "a pleading." As such, *Plaintiffs do not rely on Rule 12(f)*. Plaintiffs never once cite Rule 12(f) in their Memorandum and, instead, expressly ground their request for relief in the Court's "inherent power" to strike noncompliant materials at any stage, in accordance with Fifth Circuit law. *See* Mem. at 3. Indeed, Plaintiffs even cited a case explaining that this power permits courts to "strike documents *other than pleadings*" and relied on a Fifth Circuit case upholding the use of that power to strike such materials *on a motion to dismiss*. *See Rodgers v. La. Bd. of Nursing*, 665 F. App'x 326, 328-29 (5th Cir. 2016). To the extent Defendants acknowledge this power, they assert in a single sentence that "the circumstances here do not come close to warranting the exercise of that discretionary power." Opp. at 12. What circumstances? Defendants identify none, much less any suggesting that the Court should depart from the settled authority in Plaintiffs' Memorandum. It would be anomalous for the Court to not strike exhibits that it is prohibited from considering.

6

Defendants stray even further afield by suggesting that this request runs afoul of the parties' briefing on the Judicial Notice Motion. At the risk of stating the obvious, Plaintiffs do not simply ask that the Court decline to take judicial notice of these exhibits, *i.e.*, the relief requested in the Judicial Notice Motion, or offer any argument on that front. Rather, they seek the entry of a separate order striking them. Plaintiffs cannot seek that relief in an opposition brief. Rule 7 and this Court's Guide to Practice both make clear that any "request for a court order *must* be made by motion." As such, Plaintiffs were permitted to submit a 25-page supporting memorandum. *See* LR 7.1. But even if this request was considered part of the opposition to the Judicial Notice Motion, it would not, as Defendants claim, "circumvent the page limits" in the same manner as their improper Appendices (*infra* Point II). Opp. at 12. Plaintiffs were entitled to submit 25 pages of argument in opposition to the Judicial Notice Motion. *See* LR 7.1. Plaintiff submitted an 11-page opposition. [Doc. No. 47.] Including the argument submitted in their opening Memorandum and this Reply, Plaintiffs have submitted a total of 3 additional pages on this point, well within the 25-page limit. Furthermore, as a separate motion sequence, Defendants had a full and fair opportunity to respond.

## II.    THE STRAINED ATTEMPTS TO JUSTIFY THE CONTENTIONS IN THE APPENDICES HIGHLIGHT THAT THEY VIOLATE THE PAGE LIMITS

In their Memorandum, Plaintiffs established that the Court should strike the Appendices because they contain 12 pages of legal contentions that Defendants could not fit in the brief they submitted in support of their Motion to Dismiss, which itself exhausted the 35 page limit granted by the Court. *See* Mem. at 6-8. Defendants do not dispute that page limits are circumvented when a party distributes its legal contentions across several filings that collectively exceed the page limit, but urge that the Appendices do not because (1) the headings used therein are purely organizational and do not amount to legal argument; and (2) any time an appendix is submitted, there are references to it in the accompanying brief. *See* Opp. at 12-13. These arguments collapse under scrutiny.

7

There can be no serious debate that the Appendices comprise 12 pages of legal contentions. Defendants concede that the Appendices group misstatements by "legal argument," but offer no basis in law or logic for the conclusion that this does not mean that "all . . . material" therein is "legal argument." Opp. at 13. The Appendices themselves belie that assertion. The top of each expressly states that the chart therein lists the "misstatements from [the AC] that Defendants assert" are "nonactionable" based on the legal argument in the heading. Thus, read as a whole, *each Appendix is a series of legal contentions*. Recognizing as much, Defendants hypothesize that they "could have" specified in their brief which misstatements corresponded to each legal argument. Opp. at 13. Defendants, of course, chose not to do so and, instead, used *every line* of the 35-page limit for *other* argument. By the same token, Defendants could have submitted Appendices which organized the misstatements by subject matter but, instead, chose to present them as legal arguments.

This conclusion is reinforced by the *manner* in which the Appendices are used in the brief filed in support of Defendants' Motion to Dismiss. Defendants' efforts to minimize this as routine cross-reference (Opp. at 12) ignores the thrust of Plaintiffs' argument and the text they used to describe them. To be sure, the Motion to Dismiss refers to the Appendices in the following ways:

- "Courts in the Fifth Circuit routinely conclude that statements like these (*and the others identified in Appendix A*) . . . are immaterial corporate puffery."

- "Plaintiffs provide no factual allegations showing that the Company does not engage in these activities. Accordingly, their claims based on these statements (*and the others identified in Appendix B*) are nonactionable as a matter of law."

- "Several of Plaintiffs' alleged misstatements are protected by the safe harbor . . . . All of these statements (*and the others identified in Appendix C*) use clear, forward-looking language . . . and were accompanied by cautionary language."

- "These [opinion] statements (*and the others identified in Appendix D*) cannot support Plaintiffs' claims."

MTD Mem. at 30-32 (emphasis added). In each case, the reader is directed to the Appendix for

*additional information* that could not fit in the brief to support the stated legal argument. Thus, each Appendix serves as an extension of the legal arguments quoted in the bullets above and does not, as Defendants claim, merely "organize" information already set forth in the brief.

This sets the Appendices here apart from those in the cases relied on by Defendants. *See* Opp. at 14-15. In all three of the cases they summarize, the brief filed in support of the motion to dismiss identified *all* misstatements subject to the stated argument in the brief itself. This is evident not only from the moving papers filed in each case but also the way the chart was described by the court in each matter. *See Studen v. Funko, Inc.*, 2024 WL 2209686, at *6 (W.D. Wash. May 16, 2024) (chart contains "citations to Defendants' arguments, *as set forth in their motion to dismiss*" and thus merely represents "organizational work") (emphasis added); *Edwards v. McDermott Int'l, Inc.*, 2022 WL 3927828, at *5 n.3 (S.D. Tex. Aug. 30, 2022) (chart serves as "helpful guide" not an "attempt to avoid page limitations"); *In re PTC Therapeutics, Inc. Sec. Litig.*, 2017 WL 3705801, at *3 n.5 (D.N.J. Aug. 28, 2017) (chart "does nothing more than . . . refer to arguments *already raised in the papers*") (emphasis added). In other words, the grounds offered to dismiss each misstatement were clear from the papers even in the absence of the chart. That is simply not the case here.[2]

In fact, Defendants' only response to the cases striking nearly identical charts fails to distinguish them and, if anything, underscores why the Court should do so here. Defendants posit that the decisions in *Acadia Pharmaceuticals* and *Rentech*, two cases cited by Plaintiffs, stem from an "idiosyncratic local rule." Opp. at 15. But the local rule did not prohibit appendices from

---

[2] Similarly unpersuasive is the tag-along argument that Lumen submitted a similar chart in *Lumen I* without contest and several other courts have relied on such charts when deciding a motion to dismiss. *See* Opp. at 15 & n.5. That the *party* in those actions did not object to the use of such a chart hardly establishes that they are proper when (as here) the opposing party does so. Defendants obfuscate the issues even more by claiming that "the plaintiffs in at least two of these cases (*In re Apache* and *Carvelli v. Ocwen*), were represented by attorneys from Pomerantz, LLP, the same law firm as Plaintiffs' counsel in this action." Opp. at 15 n.5. Not so. Pomerantz represented the party who filed the initial complaint in those matters but the motion to dismiss in each was litigated by the party subsequently appointed as lead plaintiff, neither of whom was represented by Pomerantz. *See Plymouth Cty. Ret. Sys. v. Apache Corp.*, 566 F. Supp. 3d 712 (S.D. Tex. 2021) (order appointing lead plaintiff and its selection of lead counsel); *Carvelli v. Ocwen Fin. Corp.*, 2017 WL 11068524 (S.D. Fla. July 14, 2017) (order appointing lead plaintiff and its selection of lead counsel).

specifying the legal grounds to dismiss each misstatement in cases arising under the federal securities laws. Rather, as Defendants concede, it prohibited appendices from containing "any matters which properly belong in the body of the [supporting] memorandum." Opp. at 15-16. Thus, these decisions are proof positive that charts with content nearly identical to the Appendices *properly belonged in the body of the supporting brief*, fully consistent with the discussion above.

Because the Appendices present information that belongs in Defendants' supporting brief, they too should be stricken. At the very least, the Court should disregard them or the parts thereof that are argumentative to prevent Defendants from gaining an unfair tactical advantage. *See, e.g.*, *In re Talis Biomedical Sec. Litig.*, 2023 WL 3167844, at *1 n.1 (N.D. Cal. Apr. 28, 2023) (refusing to consider chart with grounds to dismiss each misstatement as it "improperly contains legal argument that is required to be in defendants' motion"); *W. Pa. Elec. Emps. Pension Fund v. Mentor Graphics Corp.*, 2017 WL 3668957, at *16 (D. Or. June 2, 2017) (disregarding exhibit listing the "asserted reasons why each statement either was not false or misleading or was otherwise protected and/or non-actionable" because it is "argumentative, and as such, is properly construed as supplemental briefing . . . in excess of the applicable page limitation") (Papak, M.J.), *aff'd*, 2017 WL 3622779 (D. Or. Aug. 23, 2017); *see also Schiller v. Physicians Res. Grp., Inc.*, 2002 WL 318441, at *1 n.1 (N.D. Tex. Feb. 26, 2002) (disregarding chart that "lists the alleged misrepresentations and omissions" next to "the reasons why they are insufficient" and noting plaintiffs' argument that such charts "extend the number of pages of briefing beyond the page limits"), *aff'd*, 342 F.3d 563 (5th Cir. 2003).

## CONCLUSION

For all the foregoing reasons, as well as those in their opening Memorandum, Plaintiffs respectfully submit that the Court should (i) strike the Judicial Notice Motion; (ii) strike the exhibits referenced therein that cannot be considered on a motion to dismiss; and (iii) strike the Appendices.

Dated:  July 24, 2024

Respectfully submitted,

**O'BELL LAW FIRM, LLC**

*/s/ Eric J. O'Bell*
Eric J. O'Bell (La. Bar #26693)
3500 North Hullen Street
Metairie, Louisiana  70002
Telephone: (504) 456-8677
Facsimile: (504) 456-8653
ejo@obelllawfirm.com

*Counsel for Plaintiffs and Liaison Counsel for the Class*

**POMERANTZ LLP**

*/s/ Justin D. D'Aloia*
Jeremy A. Lieberman (admitted *pro hac vice*)
Justin D. D'Aloia (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
jdaloia@pomlaw.com

*Counsel for Plaintiffs and Lead Counsel for the Class*

11