**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| In re: LUMEN TECHNOLOGIES, INC. SECURITIES LITIGATION II | Case No. 3:23-cv-01290-TAD-KDM<br><br>Judge: Terry A. Doughty<br><br>Magistrate Judge: Kayla D. McClusky |

**MAY IT PLEASE THE COURT:**

Defendants Lumen Technologies, Inc. ("Lumen" or "the Company"), and Kate Johnson, Chris Stansbury, Jeffrey K. Storey, and Indraneel Dev (the "Individual Defendants" and, together with Lumen, "Defendants") submit this reply memorandum in further support of their Motion to Take Judicial Notice in Support of Defendants' Motion to Dismiss (ECF No. 38) (the "Judicial Notice Motion," "Motion," or "Mot."), and in reply to Plaintiffs' response to the Judicial Notice Motion. (ECF No. 47) (the "Response" or "Resp."). Defendants' Motion to Dismiss Plaintiffs' Amended Class Action Complaint (ECF No. 36) (the "Motion to Dismiss") and supporting memorandum of law (ECF No. 40) (the "Opening Brief" or "Br."), along with Defendants' Reply Memorandum in Further Support of Their Motion to Dismiss ("Reply Br.") filed contemporaneously herewith, seek the dismissal with prejudice of Plaintiffs' Amended Class Action Complaint (ECF No. 35) (the "Complaint" or "CAC"). For the reasons set forth below and in Defendants' moving papers, the Court should grant Defendants' Judicial Notice Motion. *See* ECF Nos. 36-37, 40.

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF**
**THEIR MOTION TO TAKE JUDICIAL NOTICE**

Plaintiffs have taken two meritless stabs at challenging Defendants' Judicial Notice Motion. First, by separate motion, Plaintiffs asked the Court to strike the Motion, based on nothing more than their erroneous contention that the Motion was filed 20 minutes late, and despite being unable to cite *any* case in which a judicial notice motion was stricken solely for untimeliness. *See* ECF No. 46. And following that desperate procedural gambit, Plaintiffs have filed a separate memorandum in response to Defendants' Judicial Notice Motion that confirms that Plaintiffs have no legitimate grounds to oppose that Motion on the merits either.

Plaintiffs' Response largely ignores the ample authority in Defendants' Judicial Notice Motion and Opening Brief, and identifies no on-point case law that directly supports Plaintiffs' positions on the contested documents at issue. Instead, Plaintiffs primarily rely upon general case law assertions like "as a general matter, the Court 'must limit itself to the contents of the pleadings' on a motion under FRCP 12(b)(6)," and "Defendants cannot introduce disputed facts through judicial notice at the dismissal stage in a motion to dismiss." Resp. at 2 (citations omitted). These cases, however, do not govern here. There is a wealth of case law establishing that, in the context of securities fraud cases—where heightened pleading standards apply and a key issue at the pleading stage is what was disclosed to investors—it is clearly proper and often necessary to take judicial notice of publicly available documents and information (and it is equally proper for the Court also to consider materials incorporated by reference in the Complaint). *See* Mot. at 2-4.

This is particularly true where, as here, the Complaint itself is chock-full of selected out-of-context quotations from various publicly available materials: earnings release calls, SEC filings, industry conference transcripts, and analyst reports, along with cherry-picked studies, safety materials, industry publications, news publications, and other materials concerning lead and lead-

1

sheathed cables.  Indeed, Plaintiffs' case is based, in part, upon information supposedly "revealed" to the public in a series of Wall Street Journal articles.  *See* CAC ¶¶ 3, 9, 202-26.

Plaintiffs cannot have it both ways.  Having themselves relied upon information in the public record and put studies and industry and news publications at issue in their Complaint—and, most recently, a study cited in their opposition to Defendants' Motion to Dismiss (ECF No. 52) for which Plaintiffs did not seek judicial notice—Plaintiffs cannot prevent the Court from considering additional documents from the *same kinds of sources* simply because the contents of those documents show Plaintiffs' pleading deficiencies.  The Court can and should consider the alleged misstatements in Plaintiffs' Complaint in context and in light of all of the publicly available information, including the contested exhibits, all of which are of the type regularly considered or judicially noticed by federal courts in securities actions.  The Court should grant the Judicial Notice Motion and consider all of the Exhibits in connection with Defendants' Motion to Dismiss.

## ARGUMENT

Plaintiffs' Response confirms that the parties' dispute is relatively narrow.  Plaintiffs do not oppose the Court's consideration of 15 of Defendants' 37 total exhibits (Exhibit Nos. 3-8, 23, 25-31, and 37), each of which Plaintiffs agree "may . . . be considered by the Court for the narrow purpose of establishing what the statements said and when they were published."  *See* Resp. at 3-4.  Plaintiffs' concessions leave a total of 22 contested exhibits, including four "Category I" documents (Exhibits 1, 14-15, and 22) and 18 "Category II" documents (Exhibits 2, 9-13, 16-21, 24, and 32-36).  Plaintiffs' objections to these exhibits all fail.

**I.      The Court Can And Should Consider The Contested "Category I" Exhibits Without Judicial Notice, And They Are Subject To Judicial Notice Anyways.**

As set forth in the Motion, the Category I documents comprise: (1) archived web pages, (2) articles, (3) SEC filings, (4) earnings call transcripts, (5) industry conference transcripts, and

(6) an EPA safety pamphlet.  Mot. at 1, 5-6.  Plaintiffs' Response concedes that the Court may properly consider nearly all of the proffered Category I documents without resorting to judicial notice, because they were "referenced in the Complaint, and Plaintiffs do not dispute their authenticity."  Resp. at 3.  Plaintiffs contest only four Category I documents:

- Exhibit 1:  Lumen's 2022 Form 10-K filing (Br. at 3-4);

- Exhibit 14:  An archived webpage for the 2010 Environmental, Health & Safety Communications Panel ("EHSCP") International Communications Symposium ("ICS") conference materials (Br. at 5 n.2);

- Exhibit 15:  An archived presentation "Managing Lead Exposure During Cable Removal Operations" allegedly given by John Malone at the 2013 ICS (Br. at 5 n.2); and

- Exhibit 22:  An announcement by the Communications Workers of America union ("CWA") about the abatement settlement agreement reached following an investigation by the Minnesota Occupational Safety and Health Administration ("MNOSHA") for alleged violations of the OSHA lead standard (Br. at 8, 34).

Plaintiffs object to each of these exhibits as "improper attempts to assert incorporation-by-reference," arguing that the Court "should not incorporate-by-reference irrelevant or unreferenced documents, or consider documents simply to introduce new facts that conflict with the AC."  Resp. at 4, 7.  Plaintiffs' arguments are nonsensical.

Exhibit 1.  Plaintiffs admit that the SEC filing in Exhibit 1 is "referenced by the Complaint" (Resp. at 6), and do not seriously dispute its authenticity.  That should end the analysis.  *See* Resp. at 3.  Moreover, Plaintiffs' supposed opposition to Exhibit 1 (Lumen's 2022 Form 10-K filing) is facially incongruous with Plaintiffs' *non*-opposition to Exhibit 3 (Lumen's 2017 Form 10-K filing) (*see* Resp. at 3-4)—which contains similar disclosures.  Nonetheless, Plaintiffs insist that the Court should "disregard" Exhibit 1 because it supposedly "is included in the Motion solely to introduce facts about the cables, employees, revenues, and brands that comprise Lumen."  Resp. at 6 (citing Br. at 3-4).  Plaintiffs appear to suggest that this non-controversial background information may somehow "compet[e]" with facts in the Complaint (*see* Resp. at 6), but they do not articulate how

3

or why this SEC filing "compet[es]" with the numerous other SEC filings referenced in the Complaint.  In any event, SEC filings like Lumen's 2022 Form 10-K are plainly appropriate for judicial notice and the disclosures "about the cables, employees, revenues, and brands that comprise Lumen" (Resp. at 6) are not subject to reasonable dispute.  *See* Mot. at 1-4.

Exhibits 14-15.  Plaintiffs also seem to admit that the presentations identified or reproduced in Exhibits 14-15 are "referenced by the Complaint."  Resp. at 6; *see also* Mot. at 5.[1]  And, despite some apparent discontent with Exhibit 14 being "the result of an internet archive search" (Resp. at 5), Plaintiffs do not seriously dispute the authenticity of either exhibit.[2]  Again, that should be the end of the discussion.  *See* Resp. at 3.

Plaintiffs, however, insist that Exhibits 14-15 "are irrelevant, as they do not support the contention for which they are offered," and should be disregarded because they supposedly "are offered for the truth of the matter asserted."  Resp. at 4.  But the fact that the contents—or even mere existence—of these contested (publicly available) exhibits undercut Plaintiffs' allegation that "EHSCP is a private group, whose proceedings are generally closed to the public" (Resp. at 5 (citing CAC ¶ 128)), does not mean that these publicly available exhibits are not proper for incorporation by reference or judicial notice.  Indeed, Plaintiffs do not—and cannot—dispute that

---

[1] Plaintiffs' position is muddled by the incoherence of their arguments—asserting that Exhibits 14-15 "are not referenced" in the Complaint (Resp. at 4), but then admitting two pages later that they are "referenced by the Complaint" (*id.* at 6).  Inconsistency aside, the Complaint includes allegations from one of the presentations identified in Exhibit 14 and about the associated conference.  CAC ¶¶ 133-35.  The same goes for the presentation in Exhibit 15 (*id.* ¶¶ 134, 136).  *See* ECF No. 36-2 at 5-6 (¶¶ 16-17).

[2] Plaintiffs seem to suggest that Exhibit 14 being "an 'archived' website" or "an 'archived' copy" means it "is not a fit subject for incorporation-by-reference" (*see* Resp. at 5-6), but cite no case law to support that proposition.  In fact, courts routinely "take judicial notice of web pages that are archived using a web-based tool called the Wayback Machine" when "the authenticity of the[] exhibits has not been disputed and they purport to be a representation of the website during the relevant period."  *Moore v. Madison Reed, Inc.*, 2023 WL 5097966, at *2 n.3 (N.D.N.Y. Aug. 9, 2023) (citing *Thorne v. Square, Inc.*, 2022 WL 542383, at *1 (E.D.N.Y. Feb. 23, 2022)).

presentations from EHSCP conferences, at least at some point in time, *were* posted to the EHSCP website.  And Plaintiffs cannot simply decree this inconvenient fact "irrelevant."  *Contra* Resp. at 5-6.  The single case that Plaintiffs cite for declining to consider referenced documents that are "not relevant" is patently inapposite even as described by Plaintiffs—it involved a subject-matter "jurisdictional issue," and the court agreed it could (but did not need to) consider the documents referenced to dismiss the complaint.  Resp. at 5-6 (citing *N.L.R.B. v. Vista Del Sol Health Servs., Inc.*, 40 F. Supp. 3d 1238, 1250 (C.D. Cal. 2014)); *see also Vista Del Sol Health Servs.*, 40 F. Supp. 3d at 1249-50 & n.51.  Here, too, the Court can grant Defendants' Motion to Dismiss and dismiss Plaintiffs' Complaint with prejudice without considering "some or all" of the contested exhibits.  *Id.*  But information from EHSCP conferences and posted to the EHSCP website (and thus publicly available) is highly relevant to the context in which Plaintiffs' securities fraud claims must be evaluated, and can certainly be considered on those grounds.  *See* Mot. at 2-4.

Exhibit 22.  Plaintiffs oppose the CWA website article in Exhibit 22 on the grounds that it was "not . . . referenced in the AC."  Resp. at 5.  Plaintiffs' supposed opposition to Exhibit 22 (a public article from 2013 published on the CWA website titled "*Minnesota OSHA Lead Abatement*") is further undermined by Plaintiffs' *non*-opposition to Exhibit 23 (a public article from 2014 published on the same CWA website titled "*Lead Kills: Settlement Agreement, Background Information and More*").  As to Exhibit 23, Plaintiffs concede:

> Plaintiffs do not object to the Court's consideration of Defendants' Exhibits [sic] 23.  Defendants seek judicial notice for the fact that the CWA made public statement about a settlement with MNOSHA, based on an announcement posted on their website (Ex. 23).  The fact of the announcement's publication can be considered by the Court because that fact can be accurately and readily determined and is not within dispute.

Resp. at 4.  The same reasoning applies to Exhibit 22, of which Defendants likewise seek judicial notice for the fact that the CWA made another public statement about the MNOSHA proceeding,

5

based on an article posted on their website.  *See* ECF No. 36-2 at 7 (¶ 24).  As with Exhibit 23, the article's publication can be considered by the Court because that fact can be accurately and readily determined and is not in dispute.  *See* Ex. 22.  At a minimum, Plaintiffs' concession as to Exhibit 23 is a tacit concession that Exhibit 22 may be judicially noticed for the same reasons.

**II.    The Court Also Should Consider The Contested "Category II" Exhibits, Which May Be Judicially Noticed.**

The Category II documents comprise: (1) industry publications, (2) scientific studies, (3) a subpoena letter from another judicial proceeding, (4) analyst and news reports, (5) a CWA article, and (6) SEC filings.  Mot. at 1, 6-9.  Plaintiffs' response concedes that the Court may properly consider the CWA article in Exhibit 23 (Resp. at 3-4), but they contest the remaining Category II documents on various grounds, none of which withstands scrutiny.

Exhibits 24 and 36.  Plaintiffs object to two exhibits on the ground that Defendants "ask the Court to judicially notice opinions, not adjudicative facts . . . that cannot reasonably be questioned" (Resp. at 7-8):

- Exhibit 24:  A December 6, 2023 website article published by RealClear Health, written by a commissioner to the District of Columbia's Statewide Health Coordinating Council, titled "*The Flawed Research Behind the Wall Street Journal's Series 'America is Wrapped in Miles of Toxic Lead Cable'*" (Br. at 9-10 n.6); and

- Exhibit 36:  A letter dated July 27, 2023 from counsel to Pacific Bell Telephone Company to in-house counsel for the Wall Street Journal in connection with the lawsuit captioned *California Sportfishing Protection Alliance v. Pacific Bell Telephone Company*, 2:21-cv-00073-MCE-JDP (E.D. Cal.) (Br. at 9-10 n.6).

Both documents suggest flaws in the scientific research methodologies used to obtain data underlying the July 2023 WSJ articles.  *See* Mot. at 7-9.

While it is perhaps unsurprising that Plaintiffs would be keen to sweep these documents under the rug given their contents, they are incorrect that Defendants offer either Exhibit "to lodge subjective criticisms of the *Wall Street Journal*" series or "smuggle their own opinions about the

6

*Wall Street Journal* article inside these biased opinion pieces." *See* Resp. at 8. As made clear in the Motion, Defendants offer these exhibits not for the truth of any subjective opinion offered therein, but only "for the limited purpose of establishing that there exists a debate in the public domain about the issues addressed in the WSJ articles, including debate about the extent of any potential risk to health or the environment." Mot. at 9; *see also id.* at 7 ("for the limited purpose of establishing that information about litigation relating to the potential effects of lead on health and the environment, and the ongoing debate regarding that topic, existed in the market"); Br. at 9-10 & n.6. The existence of this debate in the public record is unquestionably judicially noticeable. *See, e.g.*, *Esquivel v. Fudge*, 2023 WL 5658338, at *7 (N.D. Tex. Aug. 31, 2023) ("A court has the power to take judicial notice of the coverage and existence of newspaper and magazine articles, as well as the fact that the market is aware of information contained in news articles."); *Walker v. Collier*, 2018 WL 11463054, at *3 (E.D. Tex. Jan. 12, 2018) ("courts are permitted to take judicial notice and rely on information available from the public realm").

Exhibits 9 and 32-35. Plaintiffs also object to a Lumen press release attached to its Q2 2023 Form 8-K (Exhibit 9) (Br. at 11 n.7) and a handful of analyst and news reports (Exhibits 32-35) (Br. at 11 n.7), which they claim represent another improper attempt to "inject opinion – not fact – . . . to dispute the well-pled allegations of the Complaint that the sharp stock declines were caused by revelations of the Defendants' exposure to lead-related liability." Resp. at 9. Plaintiffs' objections are again baseless. Company press releases and analyst reports are routinely judicially noticed in securities fraud cases—not for the truth of the matter asserted, but for the purpose of showing that particular information existed in the market. Mot. at 3-4; *see also, e.g.*, *In re Hum. Genome Scis. Inc. Sec. Litig.*, 933 F. Supp. 2d 751, 758 (D. Md. 2013) (courts "routinely take judicial notice of newspaper articles, analysts' reports, and press releases . . . to assess what the

7

market knew at particular points in time") (citation omitted); *Leacock v. IonQ, Inc.*, 2023 WL 6308045, at *9 (D. Md. Sept. 28, 2023) (taking judicial notice of "publicly available articles, reports, [and company] press releases . . . that were published or released before or during the Class Period . . . as an indication of what information was available to the market"). Again, that is the only limited (and completely proper) purpose for which Defendants offer these exhibits. *See* Mot. at 6-8.

Exhibits 2 and 16-21. Similarly, Plaintiffs argue that Defendants "use Exhibits 2 and 16-21 to prove the truth of the matter asserted and introduce competing facts." Resp. at 9. But Exhibit 2 (Lumen's 2023 Form 10-K filing) (*see* Br. at 29) is properly subject to judicial notice and may be used to establish the existence and scope of Lumen's public disclosures—including as to the publicly reported accrual (or lack thereof) of certain costs. *See* Mot. at 8. Plaintiffs remain free to dispute or challenge the accuracy of those statements—which Plaintiffs have not done—but cannot deny what the Company disclosed to the market. Likewise, Exhibits 16-21 are publicly available studies and materials concerning the potential effects of lead on health and the environment (Br. at 1, 5-7, 9; Reply Br. at 4, 9-10), which Defendants do not offer for the truth of the matter asserted but to show what information was available to the market (and to Defendants). Plaintiffs' challenge to Exhibit 18 (a Bell System 1979 pamphlet titled "Occupational Exposure to Lead Cable Removal") (Br. at 5-6 n.3) as "not public record" (Resp. at 11) is without merit. Plaintiffs fault Defendants for not saying "if, when, or how" the document became public, and criticize "an alteration to the document attributing it to an unknown website." Resp. at 11. That "alteration" was not from Defendants but from a website which describes itself as founded in 1997 "to help keep the memories of the Bell System alive." *See* https://memorial.bellsystem.com/about.html (last visited Aug. 9, 2024). Even if the document were not broadly publicly available in 1979, it

8

has at least been made public since then.

Exhibits 10-13.  Plaintiffs challenge the "inappropriate introduction" of Form 4 SEC filings showing the Individual Defendants' equity in the Company (Exhibits 10-13) (Br. at 15-16 & n.8). Resp. at 10-11.  But Plaintiffs do not and cannot deny that an increase in stock holdings over the class period affirmatively *undermines and negates* any inference of scienter; instead, Plaintiffs simply ignore the cases cited in Defendants' Opening Brief in which courts took note of increases in stock holdings.  *See* Br. at 15-16 (citing *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 348 (2d Cir. 2022); *Mei Pang v. Levitt*, 2023 U.S. Dist. LEXIS 227786, at *45 (W.D. Tex. Dec. 20, 2023)).  And while Plaintiffs acknowledge Fifth Circuit precedent holding that Form 4s may be considered "for plausible explanations of potentially suspicious sales at the pleading stage," Plaintiffs nonetheless insist that the Form 4s cannot be considered here because "the AC *does not plead suspicious stock sales*."  *See* Resp. at 10 (citation omitted).  But Plaintiffs' failure to plead any suspicious stock sales or other personal financial benefit to the Individual Defendants does not mean that they can then hide behind that pleading failure and still suggest some un-pleaded pernicious financial motive that is flatly disproved by the Form 4s—whose accuracy Plaintiffs do not even attempt to challenge.

## CONCLUSION

For the reasons stated herein, as well as those in Defendants' Judicial Notice Motion, the Court should grant Defendants' Judicial Notice Motion and consider all of the Exhibits in connection with ruling on Defendants' Motion to Dismiss.

Respectfully submitted,


/s/ *Claire Elizabeth Juneau*

Claire Elizabeth Juneau (#33209)
**KEAN MILLER LLP**
First Bank and Trust Tower
909 Poydras Street, Suite 3600
New Orleans, LA 70112
(504) 585-3050
claire.juneau@keanmiller.com

Mallory Tosch Brennan (*pro hac vice*)
**ALLEN OVERY SHEARMAN
STERLING US LLP**
800 Capitol Street, Suite 2200
Houston, TX 77002
(713) 354-4900
mallory.brennan@aoshearman.com

Lyle Roberts (*pro hac vice*)
**ALLEN OVERY SHEARMAN
STERLING US LLP**
401 9th Street NW, Suite 800
Washington, DC 20004
(202) 508-8108
lyle.roberts@aoshearman.com

*Counsel for Defendants Lumen Technologies,
Inc., Kate Johnson, Chris Stansbury, Jeffrey
K. Storey, and Indraneel Dev*


Dated: August 9, 2024

10

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2024, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

/s/ *Claire Elizabeth Juneau*
Claire Elizabeth Juneau